Bradley, J.
This action was commenced in April, 1883, to recover damages alleged to have been sustained by the plaintiff by reason of the diversion by the defendant of water from Tonawanda creek, at Batavia, in the county of Genesee, subsequently to March 10, 1879. The plaintiff had a grist and flour mill supplied and operated by water from the creek about three miles below the location of the defendant’s pumps.by which it raises water from the creek into its reservoir or tank to supply its railroad engines with water. It is said that during the dry season of the year, which is said to occupy four months or more annually, the creek is not capable of furnishing water sufficiently to operate the plaintiff’s mill but a short time daily. And it is claimed by him that this deficiency is increased, and the use of his mill essentially impaired by this diversion made by the defendant for the supply of its engines with water. In that respect the evidence of the respective parties presents a diversity of fact. While that on the part of the plaintiff tends to prove that the water so diverted and taken from the creek by the defendant would furnish head in the plaintiff’s mill pond, and supply power sufficient to enable him to grind at his mill six to eight bushels of wheat daily, the evidence on the part of the defense is to the effect that water so taken would not add any perceptible difference to the head in the pond or to the efficiency of the power to propel the machinery at the mill or to its results. This action is between the same parties and for a like cause (embracing a later period) as that of Garwood v. N. Y. C. and H. R. R. R. Co. (17 Hun, 356; affirmed, 83 N. Y., 400). *450 And the questions presented mainly arise upon exceptions taken to the reception and rejection o£ evidence.
After giving some evidence tending to prove the quantity of water pumped daily from the creek by the defendant and its effect upon the grinding capacity of the mill, a witness was asked to give his opinion of the rental value of the mill in view of the situation, and its rental value during the years in question if water had been added to his pond, distributed through each day, sufficient to grind six bushels, of wheat, to the introduction of which objections and exceptions were taken on the ground that the witness did not appear competent to express an opinion and that no-basis was shown upon which to predicate it. There was then some evidence, although by no means conclusive, from which the jury might find that the grinding capacity o£ the mill was reduced to the extent embraced within the inquiry put to the witness by the diversion complained of.
And the witness, although not a civil or hydraulic engineer, was a practical miller on the creek and was somewhat familiar with the plaintiff’s mill and its operation. He, also, had some information of the price for which mills were sold. We think he was within the rule of competency required, to express his opinion. And the same may be said of the other witnesses who gave their opinions, on the same subject.
The measure of intelligence of witnesses in respect to the matters on which, they express their opinions is one of degree, and is a question for the jury as to the weight they are entitled to, if they by their avocation, experience, and opportunity come in the class of persons who may be deemed competent to have and express opinion. The fact that the witnesses were practical millers, well acquainted with the business, and familiar with the mill, and this, stream, permitted the conclusion that they knew something of the results of the business, the corpus and rental value of such property, and the impairment of the latter by the reduction to a certain specified extent of its product-! ive power.
This depended largely upon the results involving all the-consequences to the business of the mill as well as the good will of it as the loss of profits directly occasioned by the-deficiency-front the reduction of the quantity of flour, etc., manufactured, caused by the alleged diversion of water.
One witness, who was a millwright, acquainted with the-mill, its wheels and efficiency, and with the defendant’s pumps, having stated what quantity of water the two-pumps continuously operated would take from the creek, was asked to state the grinding capacity of that quantity of water at this mill, which he was permitted to answer *451 under the objection and exception taken by the defendant’s counsel on the ground that there was no foundation laid for the evidence. It is true that it had not appeared that the two pumps were constantly in operation, but it was not error for that reason to receive the evidence. It then appeared that the pumps were operated to supply the defendant’s reservoir for the purposes before mentioned, and it was not incompetent to show as one fact what the means provided enabled the defendant to accomplish, although the question simply was, what quantity of water was actually taken from the creek, the effect of such abstraction upon the working capacity of the plaintiff’s mill, and its consequences.
The inquiry to which this objection was taken, so far as the requisite facts were wanting to give it effect, presented a question of order of proof which came within the discretion of the trial court. While it appeared by the evidence of this witness that he had experience which enabled him to state the quantity of .grain ground by a specified power, he got the number of horse power from Leffel’s tables who is the manufacturer of the turbine wheel. This appeared on the cross-examination. And when examined by the plaintiff’s counsel, he answered that Leffel’s tables were ordinarily used by millwrights, and by all of them considered accurate. To this objection and exception were taken.
We think the united, acquiescence of millwrights in the accuracy of these tables and of the results of computation founded upon them, may be treated as the common knowledge of the men of that profession, and their computations so made as competent evidence. Schell v. Plumb, 55 N. Y., 592; People v. Insurance Company, 78 id., 128.
There was no error in the reception of the evidence of such recognized accuracy and the general use made of the tables. The evidence of the defendant’s train dispatcher of the Western division of its road was read as to the number of trains running on it between Rochester and Buffalo through Batavia daily, and he referred to a book kept in his office of entries of the movements of the trains upon the western division, which embraced that portion of the road. Objection and exception were taken to his evidence of the number of trains passing over that part of the road. There was no error in its reception. The witness had some personal knowledge of the movements of the trains, and some views founded upon it which he ex pressed. It was not a mere statement of contents of the books as such. There is no apparent reason in support of the objection to the reception of evidence that the plaintiff had wheat at his mill to grind, and which he was unable there to make into flour by reason of deficiency of *452 water to run the mill. This was the effect of the evidence. And proof of the fact that he took some of it elsewhere to have ground, and sold some, although unimportant, did not add anything material to the main fact in that respect to the prejudice of the defendant. We see no error in the reception of the evidence objected to, of. Upton, taken on the trial of a former action as to the quantity of water consumed in running trains from Batavia to Rochester. The principle and extent of' consumption for the like purpose, conditions being the same, may be deemed the same one period of time as another. The question of bearing of this evidence is one of degree merely. No reason appears why evidence that water was taken from the creek above the plaintiff’s mill by other means than those produced by the defendant, was not competent. The defendant had the right to prove that water was so taken by the village of Batavia for its purposes ahd the extent of such diversion. But this was matter of defense, and its exclusion when offered on the cross-examination of the plaintiff’s witness was within the discretion of the court at that stage of the trial. And no such proof seems to have been offered after the defendant entered upon the affirmative defense at the trial.
In view of the facts developed by the defense in respect to the quantity of water taken by the defendant from the creek, it is by no means clear that the plaintiff had from such cause sustained or was entitled to recover damages to the amount of the verdict ($250) upon the basis of the estimates by the plaintiff’s witnesses. And upon the whole evidence the amount of the verdict is quite feebly supported.
But without proceeding to more specifically refer to the evidence and the inferences derivable from it which enabled the jury to reach the result they did, we think a question of fact was presented for the jury in respect to the amount of such damages so occasioned upon which they were permitted to give the result represented by their verdict. There seems to have been no error at the trial to the prejudice of the defendant.
The judgment and order should, therefore, be affirmed.
Smith, P. J., concurs; Haight, J., not sitting.